UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CHRISTOPHER WALSH, JEP SOFTWARE
GROUP, LLC, and JOSEPH PENDERGAST,

                        Plaintiffs,

      -against-

WEST HIGHLAND SUPPORT SERVICES, LLC,
STEVEN ROE, and JEFFERIES GROUP, LLC,

                        Defendants.
------------------------------------------------------------------x

19 Civ.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Christopher Walsh ("Walsh"), JEP Software Group, LLC ("JEP"), and Joseph Pendergast ("Pendergast"), by their attorneys Gallet Dreyer & Berkey, LLP, as and for their Complaint, allege with personal knowledge as to their own actions, and upon information and belief as to those of others, as follows:

Nature of the Case

1. In 2016, defendant Steven Roe ("Roe"), through his company West Highland Support Services, LLC ("West Highland"), engaged Walsh, through his company Walsh Consulting Solutions, LLC ("Walsh Consulting"), and Pendergast, through his company JEP, to create sophisticated software, including but not limited to certain software ("Software") for use by West Highland's customer defendant Jefferies Group LLC ("Jefferies"). Walsh, Walsh Consulting, Pendergast, and JEP fully performed all services for which they were engaged, including through Walsh and Pendergast's creation of the Software.

2. West Highland refused to pay either Walsh Consulting or JEP all monies respectively due to them. Additionally, West Highland and Roe unlawfully

misappropriated the Software, and other software created by Walsh, in violation of intellectual property rights that Walsh and Pendergast hold. Moreover, Jefferies continues to this day unlawfully to use the Software, despite being expressly informed that such use violates plaintiffs' rights.

3. This lawsuit seeks monetary redress and injunctive relief for the significant harm that plaintiffs have suffered, and continue to suffer, as a result of defendants' unlawful actions, including but not limited to defendants' infringement of copyrights that Walsh and Pendergast own.

## Jurisdiction and Venue

4. The Court has federal question jurisdiction over this action pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.* 28 U.S.C. §§ 1331, 1338, and 1367, and principles of supplemental jurisdiction.

5. Venue is proper in this District in accordance with 28 U.S.C. §§ 1391(b) and 1400(a).

## Parties

Plaintiffs

6. Plaintiff Walsh is a citizen and resident of the State of New York. Walsh is the sole member of Walsh Consulting, which is a limited liability company established under the laws of the State of New York with its principal place of business in New York.

7. Plaintiff JEP is a limited liability company established under the laws of the State of New York with its principal place of business in New York.

8. Plaintiff Pendergast is a citizen and resident of the State of New York. Pendergast is the sole member of JEP.

Defendants

9. Defendant West Highland is a limited liability company established under the laws of the State of New York with its principal place of business in Connecticut.

10. Defendant Roe is a citizen and resident of the State of Connecticut. Roe is the sole member of West Highland.

11. Defendant Jefferies is a limited liability company established under the laws of the State of Delaware with its principal place of business in New York. Jefferies is a wholly-owned subsidiary of Jefferies Financial Group, Inc., a corporation established under the laws of the State of New York with its principal place of business in New York.

Operative Facts

12. Plaintiffs are software developers and consultants. In or about June 2016, Roe, acting through West Highland, separately engaged Walsh, through Walsh Consulting, and Pendergast, through JEP, as independent contractors on a time and materials basis, to create the Software for use by West Highland's customer Jefferies ("Jefferies Engagement"). The Jefferies Engagement included the development of a reference data system for Jefferies' fixed income group and additional related work.

13. Walsh and Walsh Consulting performed services in connection with the Jefferies Engagement from June 2016 through early December 2016.

14. Pendergast and JEP performed services in connection with the Jefferies Engagement from June 2016 through March 2017.

15. Walsh, Walsh Consulting, Pendergast, and JEP fully performed all services in connection with the Jefferies Engagement, including the creation of the Software.

16. West Highland nonetheless refused to pay either Walsh Consulting or JEP all monies respectively due them in connection with the Jefferies Engagement. Such unpaid amounts total not less than $40,000 with respect to Walsh Consulting and not less than $37,469 with respect to JEP. West Highland's wrongful refusal to pay the monies owed to Walsh Consulting necessitated Walsh Consulting's filing of a lawsuit against West Highland, which is currently pending in the Supreme Court of the State of New York, County of Westchester.

17. In addition to West Highland's wrongful failure to pay Walsh Consulting and JEP monies owed to them, West Highland and Roe have unlawfully misappropriated the Software, without plaintiffs' permission or authorization, in violation of intellectual property rights that plaintiffs hold in the Software.

18. Neither West Highland nor Roe entered into any agreement with any of the plaintiffs or Walsh Consulting with respect to ownership of the Software.

19. The Software was not created as a "work for hire."

20. Neither West Highland nor Roe has denied that plaintiffs hold intellectual property rights in the Software.

21. Walsh and Pendergast hold multiple copyrights to the Software.

22. Jefferies has used, and continues to use, the Software, without plaintiffs' permission or authorization, in violation of plaintiffs' rights.

4

23.     Plaintiffs specifically advised Jefferies that plaintiffs hold intellectual property rights in the Software, including the copyrights to the Software that Walsh and Pendergast hold.

24.     Prior to plaintiffs' advising Jefferies that plaintiffs hold intellectual property rights in the Software, West Highland and Roe hid the fact that plaintiffs hold intellectual property rights in the Software from Jefferies, in derogation of plaintiffs' rights.

25.     Plaintiffs have specifically demanded that Jefferies cease and desist from any and all use of the Software, any modification thereof, or any derivation therefrom.

26.     Jefferies has failed to do so, and continues to this day to use the Software, and/or a modification of or derivation from the Software, without plaintiffs' permission or authorization.

27.     West Highland and Roe have similarly misappropriated intellectual property rights that Walsh Consulting and Walsh hold with respect to other products that Walsh created.

28.     For instance, in or about March 2016, Roe, acting through West Highland, engaged Walsh, through Walsh Consulting, as an independent contractor on a time and materials basis, with respect to software programs known as Application Latency Indicator for Vendors and Exchanges ("ALIVE") and Bloomberg Active Monitoring system ("BAM").  ALIVE monitors, detects, and alerts users of latency from the exchanges, including internal network issues.  BAM translates Bloomberg monitoring to a more readable Zabbix monitoring system.

29. Walsh and Walsh Consulting performed services for West Highland in connection with ALIVE and BAM from March 2016 through June 2016.

30. Walsh and Walsh Consulting fully performed all services for West Highland in connection with ALIVE and BAM.

31. West Highland and Roe have unlawfully misappropriated the ALIVE and BAM software, without the permission or authorization of Walsh or Walsh Consulting, in violation of intellectual property rights that Walsh and Walsh Consulting hold in the Software.

32. Neither West Highland nor Roe entered into any agreement with either Walsh or Walsh Consulting with respect to ownership of either ALIVE or BAM.

33. Neither ALIVE nor BAM was created as a "work for hire."

34. Neither West Highland nor Roe has denied that Walsh and Walsh Consulting hold intellectual property rights in the Software.

35. Walsh holds copyrights to ALIVE and BAM.

36. At least one customer of West Highland and Roe has been utilizing ALIVE since 2016, and continues to this day to utilize it, without the permission or authorization of Walsh or Walsh Consulting.

37. West Highland and Roe hid the fact that Walsh and Walsh Consulting hold intellectual property rights in ALIVE and BAM from that customer, and other customers, in derogation of Walsh and Walsh Consulting's rights.

38. Defendants' actions taken in violation of plaintiffs' rights were willful and knowing.

39. Defendants received, and continue to receive, financial benefits directly attributable to defendants' violation of plaintiffs' rights.

40. As a result of defendants' misconduct, plaintiffs have been, and continue to be, substantially harmed.

41. Defendants' actions are irreparably harming and will continue to harm plaintiffs unless preliminarily and permanently enjoined.  Plaintiffs have no remedy at law adequate fully to compensate them for the entirety of defendants' wrongs and plaintiffs' injuries.  The balance of the equities weighs in favor of the entry of preliminary and permanent injunctive relief in favor of plaintiffs.

42. Any and all conditions precedent to the bringing of this action have occurred, have been fulfilled, or have been waived.

## FIRST CLAIM
Copyright Infringement – 17 U.S.C. §§ 106, 501--505 – Re Software

43. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 - 42 above as if fully set forth herein.

44. Walsh and Pendergast own valid, enforceable copyrights on the Software.

45. Defendants have infringed Walsh and Pendergast's copyrights on the Software.

46. Defendants' actions with respect to the Software as described throughout this Complaint have been willful, intentional, deliberate, and purposeful, and in disregard of and indifferent to Walsh and Pendergast's rights.

47. As a direct and proximate result of defendants' actions with respect to the Software, Walsh and Pendergast are suffering, and will continue to suffer, immediate and irreparable injury.

48. As a direct and proximate result of defendants' actions with respect to the Software, Walsh and Pendergast have been, and are continuing to be, damaged, in an amount to be determined at trial.

49. Defendants are jointly and severally liable for the damages sustained by Walsh and Pendergast as a result of defendants' unlawful conduct with respect to the Software, including defendants' respective profits that are attributable to the infringement of Walsh and Pendergast's copyrights on the Software.

50. Defendants are additionally jointly and severally liable for plaintiffs' full costs and attorneys' fees.

51. All materials in defendants' possession, custody, or control that infringe upon Walsh and Pendergast's copyrights on the Software should be impounded and, upon conclusion of this action, destroyed.

## SECOND CLAIM
Copyright Infringement – 17 U.S.C. §§ 106, 501--505 – Re ALIVE and BAM

52. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 - 51 above as if fully set forth herein.

53. Walsh owns valid, enforceable copyrights on ALIVE and BAM.

54. West Highland and Roe have infringed Walsh's copyrights on ALIVE and BAM.

8

55. West Highland and Roe's actions with respect to ALIVE and BAM as described throughout this Complaint have been willful, intentional, deliberate, and purposeful, and in disregard of and indifferent to Walsh's rights.

56. As a direct and proximate result of West Highland and Roe's actions with respect to ALIVE and BAM, Walsh is suffering, and will continue to suffer, immediate and irreparable injury.

57. As a direct and proximate result of West Highland and Roe's actions with respect to ALIVE and BAM, Walsh has been, and is continuing to be, damaged, in an amount to be determined at trial.

58. West Highland and Roe are jointly and severally liable for the damages sustained by Walsh as a result of West Highland and Roe's unlawful conduct with respect to ALIVE and BAM, including West Highland and Roe's respective profits that are attributable to the infringement of Walsh's copyrights on ALIVE and BAM.

59. West Highland and Roe are additionally jointly and severally liable for plaintiffs' full costs and attorneys' fees.

60. All materials in defendants' possession, custody, or control that infringe upon Walsh's copyrights on ALIVE and BAM should be impounded and, upon conclusion of this action, destroyed.

## THIRD CLAIM
Breach of Contract

61. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 - 60 above as if fully set forth herein.

62. JEP fully and faithfully performed any and all obligations with respect to the Jefferies Engagement.

63. West Highland's conduct as described above, including but not limited to West Highland's failure and refusal to pay monies due to JEP in connection with the Jefferies Engagement, constitutes material and substantial breaches of West Highland's contractual obligations to JEP with respect to the Jefferies Engagement. West Highland's actions additionally violated the duty of good faith and fair dealing that attaches to all agreements.

64. As a direct and proximate result of West Highland's actions in breach of its contractually-related duties, JEP has been damaged in an amount to be determined at trial, but in any event not less than $37,469, for which West Highland is liable.

WHEREFORE, plaintiffs respectively request that the Court enter judgment:

1. On the First Claim, (a) awarding against defendants, jointly and severally, (i) the damages that Walsh and Pendergast have suffered as a result of defendants' actions with respect to the Software, in an amount to be determined at trial, such amount to include, but not be limited to, defendants' respective profits that are attributable to the infringement of Walsh and Pendergast's copyrights on the Software or (ii) at Walsh and Pendergast's election, statutory damages in the amount of $150,000 per infringement; (b)

awarding against defendants, jointly and severally, plaintiffs' full costs and attorneys fees; (c) preliminarily and permanently enjoining defendants from any and all use of the Software, any modification thereof, or any derivation therefrom without plaintiffs' permission or authorization; and (d) directing that all materials in defendants' possession, custody, or control that infringe upon Walsh and Pendergast's copyrights on the Software be impounded and destroyed.

   2. On the Second Claim, (a) awarding against West Highland and Roe, jointly and severally, (i) the damages that Walsh has suffered as a result of defendants' actions with respect to ALIVE and BAM, in an amount to be determined at trial, such amount to include, but not be limited to, West Highland and Roe's respective profits that are attributable to the infringement of Walsh's copyrights on ALIVE and BAM or (ii) at Walsh's election, statutory damages in the amount of $150,000 per infringement; (b) awarding against West Highland and Roe, jointly and severally, plaintiffs' full costs and attorneys fees; (c) preliminarily and permanently enjoining defendants from any and all use of ALIVE and BAM, any modification thereof, or any derivation therefrom without plaintiffs' permission or authorization; and (d) directing that all materials in defendants' possession, custody, or control that infringe upon Walsh's copyrights on ALIVE and BAM be impounded and destroyed.

   3. On the Third Claim, awarding against West Highland the damages that JEP has suffered as a result of West Highland's breach of its contractually-related duties with respect to the Jefferies Engagement, the amount of such damages to be determined at trial, but in any event not less than $37,469.

4.	Awarding to plaintiffs interest and their costs and expenses incurred in this action, including attorneys' fees.

5.	Awarding to plaintiffs such other and further relief as the Court deems just and proper.

Dated:	New York, New York
	January 17, 2019

                         GALLET DREYER & BERKEY, LLP

                         By:	s/ David S. Douglas
                               David S. Douglas

                         845 Third Avenue, 5th Floor
                         New York, New York 10022
                         (212) 935-3131
                         dsd@gdblaw.com

                         Attorneys for Plaintiffs

01009900.DOCX.4